United States District Court
Southern District of Texas
**ENTERED**
June 27, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § <br> APPLICATION OF RSM PRODUCTION § <br> CORPORATION and JACK J. GRYNBERG, § <br> § <br> *Petitioners* § <br> § MISCELLANEOUS ACTION H-16-1135 <br> v. § <br> § <br> NOBLE ENERGY, INC. § <br> § <br> *Respondent.* § | |

**ORDER**

Pending before the court is petitioners RSM Production Corporation and Jack J. Grynberg's (collectively, "Petitioners") ex parte petition and application to permit discovery from respondent Noble Energy, Inc. ("Noble") for use in a foreign proceeding. Dkt. 1. The court ordered Petitioners to serve the petition and application to Noble and ordered Noble to file a response. Dkt. 6. The court held a hearing on the petition on June 15, 2016, at 10:00 a.m. Dkt. 14. After the hearing, Petitioners filed a supplemental brief and a motion to modify their discovery requests. Dkt. 19, 22. Respondent filed a response to the motion to modify, and Petitioners filed a reply. Dkts. 23, 24. After considering the application, motion, responsive filings, arguments at the hearing, and applicable law, the court is of the opinion that the motion to modify discovery requests (Dkt. 22) should be GRANTED and the application to permit discovery for use in a foreign proceeding, as modified, (Dkt. 1) should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

Petitioners request limited discovery in connection with a civil case pending in the Jerusalem District Court in the State of Israel, *RSM Production Corp. et al. v. Minister of National*

*Infrastructures, Energy and Water, et al.*, Case No. 27516-04-15. Dkt. 4. Petitioners are the plaintiffs in the Israeli proceeding. *Id.* RSM Production Corporation ("RSM") is a Colorado corporation with its principal place of business in Colorado. *Id.* It is a hydrocarbon exploration and drilling company. *Id.* Grynberg, a citizen of Colorado, is the CEO of RSM. *Id.* Petitioners seek damages in the Israeli proceeding for alleged misconduct by Israeli government officials with regard to the issuance or restriction of permits and licenses that allowed individuals and companies to explore and drill in the Eastern Mediterranean Sea. *Id.*

Petitioners contend that Noble and Israeli tycoon Yitzhak Teshuva obtained the only exploration and drilling permit and license for the Eastern Mediterranean area that had hydrocarbon deposits in commercial quantities. *Id.* Specifically, Petitioners contend that Noble "is the majority participant in a consortium of companies that in and around 2006-2008 received licenses and permits from [the defendants in the Israeli case] to explore for and exploit the sizable natural gas deposits in the [State of Israel's exclusive economic zone]." *Id.* Petitioners believe that Noble has electronic and other documents that will demonstrate how the Israeli Ministry of Energy and other defendants in the Israeli case administered the issuance of these permits during the relevant years. *Id.* They also contend that Noble officials have personal knowledge of the manner in which this licensing regime was administered. *Id.* They seek discovery of documents and testimony from Noble officials to aid in the Israeli case. *Id.* Noble is headquartered in the Southern District of Texas. *Id.*

Noble opposes the discovery. Dkt. 11. Noble asserts that it conducts all of its activities in Israel through its affiliate, Noble Energy Mediterranean Ltd. ("NEML"). *Id.* Noble contends that Petitioners are merely attempting to circumvent Israel's discovery rules by obtaining an order to conduct discovery on NEML's parent company, and Noble seeks the court's protection from Petitioners' overbroad and burdensome discovery requests. *Id.* Noble points out that no discovery

has even taken place in the Israeli case and that there are pending motions to dismiss in that case. *Id.* Noble notes that civil depositions are rare in Israel and that Petitioners have not even subpoenaed NEML, even though it is within the Israeli court's jurisdiction.

## II. Legal Standard

Under 28 U.S.C. § 1782,

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or *upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege. (b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

28 U.S.C. § 1782 (emphasis added). "[O]nce an interested party makes the requisite showing that it has met the statutory factors, the district court judge has the discretion to grant the application seeking the authority to issue subpoenas." *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012). "'[Section] 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in

3

U.S. courts in accordance with federal rules. The manner in which discovery proceeds will be determined by normal discovery rules.'" *Id.* at 554 (quoting *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012)).

A "district court is not required to grant a § 1782(a) discovery application simply because it has authority to do so." *Intel. Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264, 124 S. Ct. 2466 (2004). District courts should consider the following factors when determining whether to grant the discovery: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," as "the need for § 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant" in the foreign proceeding; (2) the nature and character of the foreign proceedings; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome." *Id.*

### III. ANALYSIS

Petitioners contend that the three statutory criteria are met because (1) Noble is headquartered in Houston; (2) the discovery sought is intended solely for use in the Israeli proceeding; and (3) the request is being made by "interested persons"—Petitioners are parties in the Israeli proceedings. Dkt. 4. Petitioners assert that all of the documents and testimony they seek is relevant to the Israeli proceeding and that, as such, the documents are "presumptively discoverable." Dkt. 4 (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999) ("The party opposing discovery has the 'burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application.'" (quoting *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998))).

Noble agrees that the statutory factors are met. Instead, it urges the court to deny the discovery because the discretionary factors weigh against permitting discovery. Dkt. 11. Petitioners,

on the other hand, argue that the discretionary factors are met because (1) Noble is not a participant in the Israeli proceeding; (2) the character and nature of the Israeli proceeding are consistent with the discovery sought here, as it is a suit for money damages due to alleged tortious acts of the defendants; (3) the Israeli courts are receptive to evidence that is obtained through § 1782; (4) this is not an attempt to circumvent discovery in Israel, which has not even begun; and (5) the request is not overly broad or unduly burdensome as it is limited in both time and scope.

At the hearing, the parties agreed to attempt to reach an agreement as to the scope of discovery. Dkt. 22. They were, unfortunately, unable to reach an agreement. However, Petitioners did agree to limit their requests to a two-year timeframe, for the period of time from 2005 through 2007, and they agreed that documents that are in the custody and possession of NEML that were originated and maintained in Israel be excluded from production. *Id.* Petitioners also agreed to defer the issue of taking the deposition of an appropriate corporate representative for later court determination pending the completion of document review. *Id.* They seek leave to modify their discovery requests in accordance with this stipulation. *Id.*

Noble notes in response that it has combed through the documents held at its headquarters and numerous repositories controlled by its headquarters, including thirty boxes of documents contained at an offsite storage facility. Dkt. 23. It asserts that this search has taken dozens of hours of time by several Noble employees and attorneys, yet they found only eight responsive documents. *Id.* It cost Noble approximately $30,000 to conduct this search. Dkt. 23-1 (Eilers Dec.). Noble contends that additional searching is unlikely to result in more documents because Noble has a standard document retention policy and documents from prior to 2009 are no longer available unless they were specifically archived. *Id.* Noble notes that it did not search through emails because Noble's emails were stored in a decentralized manner during the relevant timeframe and searching

emails would involve going to each employee to determine where he or she kept her files and then applying search terms in each separate location. Dkt. 23-1. Noble's counsel asserts that "searching through emails in this period can cost hundreds of thousands of dollars and cause a significant administrative distraction." *Id.* As far as the revised requests, Noble states that these requests do not lessen its burden. *Id.* Noble thus asks the court to deny Petitioners' request for the discovery sought in both the original and amended § 1782 petitions. Dkt. 23. Alternatively, Noble requests that should the court determine that Petitioners have met the discretionary *Intel* factors, that the court limit production to only physical documents known to exist within Noble's control in and around Houston, Texas. *Id.*

Petitioners argue in reply that Noble's assertion that it has only found eight documents relating to the significant investment decision to become involved in the Israeli consortium transaction "strains common sense credulity." Dkt. 24. Petitioners take issue with Noble's contention that the number of documents found is limited due to a document retention policy because Noble did not produce a copy of the document retention policy. *Id.* Petitioners are also concerned that Noble does not confirm that NEML has the responsive documents and that, since Noble is NEML's parent and should have control over NEML, Noble should also assess the available records of NEML. *Id.* Petitioners point out that NEML is a non-party in the Israeli proceeding and, as such, Petitioners will likely be unable to secure documents from NEML even though the Israeli court has jurisdiction over NEML. *Id.* Petitioners assert that this proceeding is the "only realistic opportunity" Petitioners have to secure documents relevant to Noble's participation in the consortium. Petitioners assert that the court has discretion to order the production of NEML's files through Noble. *Id.* Petitioners then state that the "offered to exclude NEML production from the scope of discovery . . . on the assumption that Noble could and would produce a body of relevant due

diligence and corporate approval documents, including communications by and between senior management involved in the oversight and approval of subject transaction."[1] *Id.* Petitioners then argue that locating emails and communications to and from a finite set of officers and Israeli officials during a two-year timeframe regarding a specific transaction in not unreasonably onerous. *Id.* Petitioners note that they would be willing to defray some of the costs of the communications/email search and suggest foundational depositions of two deponents, one from Noble and one from NEML. *Id.*

The court first notes that the statutory requirements are met. It will now consider the *Intel* factors.

### A. Whether the Respondent is a Participant in the Foreign Proceeding

Noble contends that the first discretionary factor weighs against discovery because its affiliate, NEML, is subject to jurisdiction in Israel, and the documents that Petitioners seek would all be in NEML's possession, custody, and control. Dkt. 11. Noble points out that the original subpoena demands that Noble produce documents held by its subsidiary. *Id.* Noble notes that courts "routinely reject attempts to subpoena United States parent corporations in these circumstances." *Id.*

Petitioners assert that NEML is incorporated in the Cayman Islands, not Israel. Dkt. 12. Petitioners assert that they believe NEML is a wholly owned subsidiary of Noble and under its full control. *Id.*

---

[1] Thus, it appears that Petitioners are withdrawing their agreement to exclude documents in the possession and custody of NEML from their application after learning of the limited number of documents Noble was able to find.

Noble relies on *Kestrel Coal Pty. Ltd. v. Joy Global*, 362 F.3d 401, 404 (7th Cir. 2004) (Easterbrook, J.) and *Norex Petroleum Ltd. v. Chubb Insurance Co. of Canada*, 384 F. Supp. 2d 45, 52 (D.D.C. 2005).  In *Kestrel*, a litigant in Australia could not obtain documents in the Australian proceeding, so he filed a proceeding in Wisconsin demanding that one of the parent companies of the Australian defendant require "its subsidiaries to retrieve documents in Australia and the United Kingdom, have them shipped to Wisconsin, and there provide them to Kestrel, which will cart them to Australia."  *Kestrel*, 362 F.3d at 403–04.  The district court had allowed the discovery, noting "'[w]hen you're the puppeteer and you're pulling the strings of companies around the world, there are consequences.'"  *Id.* (quoting the district court).  Judge Easterbrook, writing for the Seventh Circuit, noted that Kestrel had not contended that the requirements for piercing the corporate veil had been met.  *Id.*  Ultimately, Judge Easterbrook concluded that "[a]lthough air transportation, the Internet, and even fax machines have shrunk the globe, it remains best to conduct an Australian suit in Brisbane rather than in Milwaukee."  *Id.* at 406.  This court agrees with Judge Easterbrook's assessment.  It is best to conduct an Israeli suit in Israel rather than in Houston.

In *Norex*, the United States District Court for the District of Columbia reviewed caselaw relating to obtaining documents held by subsidiaries outside of the United States, including *Kestrel*, and found that "[t]his body of caselaw suggest that § 1782 is not properly used to seek documents held outside the United States as a general matter."  *Norex*, 384 F. Supp. 2d at 52.

Petitioners rely on *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013), and *In re Ex Parte Application Varian Medical Systems International AG*, 2016 WL 1161568, at *4 (N.D. Cl. Mar. 24, 2016).  *In Kreke*, the United States District Court for the Southern District of New York found that the first discretionary factor weighed "strongly in favor of denying the application" because the parent company from whom the applicant sought documents was

8

headquartered in Germany, the foreign proceeding was in Germany, and there was no allegation that the documents were beyond the reach of Germany's jurisdiction. 2013 WL 5966916, at *5. Petitioners, however, cite *Kreke* because the court stated that "the notion that [the parent company] could somehow be a nonparticipant in the foreign action is untenable." *Id.*

In *Varian*, the United States District Court for the Northern District of California noted that the "first *Intel* factor 'militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity.'" 2016 WL 1161568, at *4 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)). The *Varian* respondent was a subsidiary of a foreign parent company, and the parent company was a participant in the foreign proceeding. The court found that this "relationship tends to advise against § 1782 discovery." *Id.* The court, however, found the factor neutral because it was "unclear whether the [German] court [could] in fact order the discovery [the applicant sought]."[2] *Id.* Neither of these cases persuades the court that the first factor should weigh in favor of Petitioners.

After considering all of the cases, the court finds that the first factor weighs against allowing discovery of NEML documents to the extent Petitioners are still demanding that Noble obtain NEML documents.

B.  **Character and Nature of the Israeli Proceeding**

The parties do not dispute that at least some of the requested documents are the types of documents needed in the Israeli case. This factor weighs in favor of discovery.

---

[2] Petitioners cite a couple of other cases in their opening memoradum, but these cases are equally unhelpful to their position. *See* Dkt. 4 at 14 (citing *In re Appl. Of Nokia Corp.*, 2007 WL 1729664 (W.D. Mich. Jan. 13, 2007), and *In re Appl. Of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 294 (D.D.C. 2011)).

### C. Whether Israeli Courts Are Receptive to § 1782 Evidence

The parties do not dispute that Israeli courts are generally receptive to § 1782 evidence. This factor weighs in favor of discovery.

### D. Whether This Request Is an Attempt to Circumvent Discovery in Israel

With regard to the fourth discretionary factor, whether this is an attempt to circumvent discovery in Israel, Noble contends that Petitioners are improperly seeking refuge in the more favorable fact-finding process in the United States to circumvent the more stringent discovery rules in Israel. Dkt. 11. It points out that Petitioners admit that discovery has not yet begun in Israel, that it would be difficult to obtain pre-trial discovery for NEML in the Israeli proceeding, and that the Israeli rules of civil procedure are much less extensive than the rules in the United States. *Id.* (citing Dkt. 3).

Petitioners do not argue that they could obtain this discovery under Israeli rules. Rather, they assert that § 1782 does not limit discovery to only materials available in foreign proceedings. Dkt. 12. In *Intel Corp. v. Advanced Micro Devices, Inc.*, the United States Supreme Court noted that "[w]hile comity and parity concerns may be important touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of § 1782." 542 U.S. at 261. However, the Court also instructed that district courts consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264. Thus, while the court should not base its § 1782(a) decision on whether this discovery would be allowed in Israel, it may consider Israeli restrictions and whether this request is an attempt to thwart those restrictions.

10

Petitioners also rely on *Heraeus Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011); *IPCom GmbH & Co. KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 924 & n.39 (N.D. Cal. 2014); and *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015), to demonstrate that the court should not limit discovery to only discovery allowed in Israel. In *Heraeus Kulzer*, the Seventh Circuit noted that the district court erred in deciding that the applicant was attempting to circumvent German law because at one point the district court suggested that the applicant could get all the discovery it needed in Germany and then later suggested that the applicant was affronting the German legal system by seeking more discovery in the United States than Germany allowed—contradictory suggestions. 633 F.3d at 597. The court found that the district court was incorrect in its suggestion that the applicant "was affronting the German legal system" with its discovery request, as even though the applicant could not obtain comparable discovery using German procedures, nothing suggested "that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence" that was produced in the United States.

In *IPCom GmbH & Co. KG*, the federal district court for the Northern District of California noted that the information requested did "not appear within the immediate reach of a German tribunal" and still ordered discovery pursuant to § 1782. *IPCom GmbH & Co. KG*, 61 F. Supp. 3d 919, 924 & n.39. In *Mees*, the Second Circuit noted that § 1782 "contains no foreign-discoverability requirement," and that while district judges "'may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782,'" district courts should not outright deny discovery under § 1782 "solely because such discovery is unavailable in the foreign country." *Mees*, 793 F.3d at 303.

After considering these cases in light of the evidence in this case, the court finds that this factor weighs slightly against allowing discovery. While the requested materials are likely not

11

discoverable in Israel, it is clear that Petitioners are attempting to get discovery in the United States from the parent company due to restrictions they face in getting the documents from NEML in Israel.

### E. Whether the Requests are Overly Broad or Unduly Burdensome

The court finds, after balancing the discretionary factors, that the decision whether to allow discovery turns on the final discretionary factor, whether the requests are overly broad and unduly burdensome. Noble notes that the original discovery requests were "staggering in scope" and impose "unreasonable demands on Noble," which is not even a party in the Israeli case. Dkt. 11 Noble argues that these document requests largely bear no relevance to the Israeli proceedings, that the requests often demand Noble respond on behalf of other companies, that the breadth makes compliance costly, that the requests run afoul of the proportionality rule in Federal Rule of Civil Procedure 26, and that many of the requests seek documents and testimony that do not exist. *Id.*

Petitioners agreed to work with Noble to limit the request and have limited the requests significantly. Noble, as discussed above, continues to take issue with the scope and expense of the requests, particularly the expense of producing emails.

The court finds that the expenses, as set forth in Noble's general counsel's supplemental declaration, are unduly burdensome and disproportionate to the needs of this case. Additionally, the court does not believe it appropriate to order the parent company to produce documents and deponents from the Israeli office of its subsidiary. However, the court does believe that limited discovery is appropriate and will aid in the foreign proceeding. The application will therefore be GRANTED IN PART AND DENIED IN PART.

## IV. Conclusion

Petitioners' motion to modify discovery request (Dkt. 22) is GRANTED. Petitioners' application for discovery (Dkt. 1), as modified, is GRANTED IN PART AND DENIED IN PART as follows:

(1) Noble shall make a good faith effort to obtain relevant documents that are responsive to Petitioners' *revised* discovery requests (with the narrowed two-year timeframe) that are located in and around Houston, Texas.

(2) Noble shall designate a Rule 30(b)(6) witness who was involved in the due diligence associated with any decisions made by Noble relating to NEML's participation in the consortium. Noble shall designate this witness within fourteen days of the date of this order and provide potential dates on which the witness is available for a deposition on or before September 1, 2016. The deposition shall take place in Houston, Texas, and Petitioners shall bear the costs of the deposition.

(3) Noble shall produce the non-privileged documents it finds during its document search to Petitioners within a reasonable time before the Rule 30(b)(6) deposition. Noble shall provide a privilege log if it withholds documents due to privilege.

(4) After the Rule 30(b)(6) deposition, the parties shall meet and confer regarding which Noble executives are likely to have responsive emails and what search terms should be used to find relevant and responsive emails in their email accounts. The parties shall file a joint notice with the court at this point advising of the status and whether court intervention is necessary.

(5) Once the parties agree regarding which executives may have responsive emails and search terms (or the court has intervened to help limit the volume and expense), Noble shall perform a diligent search for relevant emails in accordance with that agreement and produce the non-privileged emails

to Noble within a reasonable timeframe thereafter. Noble shall also provide a privilege log if it withholds emails due to privilege.

(6) If Petitioners believe that more depositions are warranted after Noble produces the relevant, non-privileged emails discussed above, Petitioners shall file a motion requesting additional discovery with this court.

(7) The court will not order Noble to produce documents that are solely in the custody and control of NEML. However, if NEML documents are located in and around Houston, Noble shall produce them.

(8) The court will not order depositions of executives who work solely for NEML.

Signed at Houston, Texas on June 27, 2016.

_____
Gray H. Miller
United States District Judge