UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| APPLICATION OF RSM PRODUCTION § | |
| CORPORATION and JACK J. GRYNBERG, § | |
| § | |
| *Petitioners* § | |
| § | MISCELLANEOUS ACTION H-16-1135 |
| *v.* § | |
| § | |
| NOBLE ENERGY, INC. § | |
| § | |
| *Respondent.* § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion filed by petitioners RSM Production Corporation and Jack J. Grynberg's (collectively, "Petitioners") that contains a motion to administratively reopen this case, a motion to compel production of emails, and motion for leave to take third-party deposition. Dkt. 28. Respondent Noble Energy, Inc. ("Noble") filed a response, Petitioners filed a reply, and Noble filed a surreply. Dkts. 39, 40, 42. After considering the briefing, evidence, and applicable law, the court is of the opinion that the motion to reopen the case should be GRANTED, the motion to compel production of emails should be GRANTED IN PART, and the motion for leave to take a third-party deposition should be DENIED.

**I. BACKGROUND**

On May 18, 2016, Petitioners filed an ex parte petition and application for an order under 28 U.S.C. § 1782 to permit them to obtain discovery from Noble for use in an ongoing proceeding in Israel. Dkt. 1. The court ordered Petitioners to serve Noble and ordered an expedited response. Dkt. 6. Noble responded, Petitioners replied, and Noble filed a surreply. Dkts. 11, 12, 13. The court held a motion hearing on June 15, 2016, and it issued an order partially granting the requested

discovery on June 27, 2016. Dkts. 14, 25. The court ordered Noble to make a good faith effort to obtain relevant documents responsive to Petitioners' revised discovery requests, designate a Rule 30(b)(6) witness and make him or her available for a deposition in Houston, and produce relevant non-privileged documents before the Rule 30(b)(6) deposition. Dkt. 25. This was all to occur on or before September 1, 2016. *Id.* The court also ordered the parties to meet and confer—after the Rule 30(b)(6) deposition—regarding any executives who the deposition revealed may have responsive emails and attempt to agree on appropriate search terms for production of those emails. *Id.* The parties were ordered to file a joint notice with the court advising it whether court intervention was necessary. *Id.*

The briefing and affidavits submitted with the current motion indicate that Noble provided documents prior and produced a Rule 30(b)(6) deponent as required by the court. *See, e.g.*, Dkt. 28. The parties agreed to focus on the emails of Susan Cunningham after the deposition, and Noble proposed search terms for Susan Cunningham's emails.[1] *Id.* The process then stopped. *See id.* Petitioners did not respond to the proposed search terms and thus did not "meet and confer" as ordered by the court. *Id.* No party filed a joint notice as required by the court. *Id.* Petitioners did not contact Noble about the § 1782 discovery until July 26, 2017, and the court did not hear from the parties until November 20, 2018. *See id.* Petitioners assert that the delay was due in part to a receiver being appointed for RSM in December 2016, and the need for the receiver to "get up to speed." *Id.* Petitioners contend that the receiver did not grant authority to proceed with the discovery ordered by the court until July 2017. *Id.* Petitioners state that they were also dealing with

---

[1] Cunningham was the Senior Vice President of Exploration and was in charge of Noble's foreign exploration projects during the relevant time period. Dkt. 28, App. A1, Ex. 2.

motions to dismiss in the Israeli case, which were denied by orders dated July 21, 2017, and November 8, 2017. *Id.*

Petitioners communicated with Noble in July 2017 after the first motion to dismiss was denied and requested that the parties complete the discovery ordered by the court. *Id.*; *see* Dkt. 39-5 (email from Petitioners' counsel to Noble's counsel that seeks to resume § 1782 discovery and proposes search terms). This was more than one year after the court ordered the discovery. Noble requested translated copies of the orders and amended complaint in the Israeli case before it was willing to proceed. *See* Dkt. 28. Petitioners contend that they provided these documents in mid-September of 2017, and that Hurricane Harvey then "negatively impacted the momentum to move discovery forward." *Id.*; *see* Dkt. 30-5 (email dated October 17, 2017, indicating that Petitioners' counsel provided Noble's counsel with the requested documents from the Israeli case and translations and would "like to get this done by the end of the month"). In early November 2017—over a year ago—Noble's counsel objected to the amended pleadings in the Israeli case, which named Noble as a member of a consortium that is allegedly accused of paying bribes to an Israeli Ministry Official, and, according to Petitioners, refused to provide any discovery in this case until the pleadings in Israel were amended to delete reference to Noble. Dkt. 28. The parties continued to discuss through February 2018 and then reached an impasse. *Id.* Petitioners contend that they "reached out" to Noble's counsel again in May 2018, but Noble did not respond, and they proposed narrower search terms in October 2018 but were unable to reach an agreement with Noble. *Id.*; *see* Dkt. 30-7 (May 10, 2018 email from Petitioners' counsel to Noble's counsel asking if Noble was able to resolve its "concerns over the Israeli pleadings").

Petitioners request that the court (1) administratively reopen the case; (2) compel Noble to produce Cunningham's emails based on certain search terms; and (3) grant leave for Petitioners to

3

subpoena and depose Cunningham, who is no longer employed by Noble. Dkt. 28. Noble is opposed to all of the requested relief and argues that the two-year delay and amended pleading in Israel has altered the balance of the factors the court originally considered when it granted Petitioners' application for § 1782 discovery. Dkt. 39. Noble thus requests that the court revisit its § 1782(a) determination in light of the changed posture of the case. *Id.*

## II. LEGAL STANDARD

As to Petitioners' motion to reopen this administratively closed case, administrative closure "is merely a case-management tool used by district court judges to obtain an accurate count of active cases." *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 250 (5th Cir. 2006). So, the court's consideration in determining whether to grant the motion to reopen is whether the case should be returned to active status. In other words, is there some issue in the case over which the court retains jurisdiction that requires court intervention.

As to the request to compel production of emails and authorize Cunningham's deposition, the court must consider not only its inherent authority to manage discovery, but also whether it should reconsider its ruling allowing discovery in aid of a foreign proceeding under 28 U.S.C. § 1782. Under Federal Rule of Civil Procedure 54(b), any decision by a court that is not a final judgment "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Under § 1782, "[O]nce an interested party makes the requisite showing that it has met the statutory factors," which is not at issue in this case, "the district court judge has the discretion to grant the application seeking the authority to issue subpoenas." *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012). "'[Section] 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance

4

with federal rules. The manner in which discovery proceeds will be determined by normal discovery rules.'" *Id.* at 554 (quoting *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012)). A "district court is not required to grant a § 1782(a) discovery application simply because it has authority to do so." *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264, 124 S. Ct. 2466 (2004). District courts should consider the following factors when determining whether to grant the discovery: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," as "the need for § 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant" in the foreign proceeding; (2) the nature and character of the foreign proceedings; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome." *Id.*

### III. ANALYSIS

The court will first determine whether the circumstances have changed sufficiently for it to reconsider its ruling allowing discovery under § 1782. It will then decide whether the discovery requested by Petitioners is warranted and whether to reinstate this case to its active docket.

With regard to the § 1782 factors, the court finds that the only factors that it needs to revisit due to the change in circumstances are the first and the fourth factors.[2] As to the first factor, whether

---

[2] Noble argues that the third factor has also changed because, since Noble is now "directly accused . . . of misconduct," the attempt to obtain discovery from Noble "is even more of an end-run around Israeli discovery rules." Dkt. 39 at 14. Noble has not provided any evidence, however, that Petitioners' request for § 1782 discovery is an attempt to circumvent Israeli proof-gathering restrictions. Absent evidence about how the change in Noble's status in the Israeli case impacts discovery rules in Israel, the court finds it inappropriate to alter the weight of this factor. Noble additionally asserts that the Israeli court has expressed that the case is "borderline" and that, given the potential lack of merit of Petitioners' claims in that case, the requested discovery here is not proportional. While proportionality is an important consideration in discovery disputes, the court will not endeavor to assess the viability of the Israeli lawsuit with the limited information available.

5

the party from whom discovery is sought is a "participant" in the foreign proceeding, Noble is now allegedly named as a member of the consortium in the Israeli case, and Noble asserts it is a "target" in that litigation.[3] Petitioners assert that Noble is not a named party, no cause of action has been asserted against Noble, and it is not the target of any claim asserted. Dkt. 40. From the court's understanding of the facts of the Israeli case, the court does not believe the change—naming Noble as a member of the consortium—has enough of an impact on the first *Intel* factor to alter the balance as it does not appear that Noble is a "participant." This finding is supported by the fact that Noble requested translated copies of the pleadings from Petitioners, *see* Dkt. 28 ¶ 13, which indicates Noble was not even served in the Israeli case.

The fourth factor—whether the discovery is unduly intrusive or burdensome—has changed more significantly. It has been more than two years since Noble proposed search terms to Petitioners, and, since that time, employees with knowledge are no longer employed by Noble. Dkt. 39. Additionally, Noble originally identified and collected emails after the Rule 30(b)(6) deposition, but when Petitioners were unresponsive and appeared to have abandoned the case, Noble placed emails it had been storing into dormant storage status. *Id.* Reactivating the data will cost Noble $2, 100. Dkt. 39, Ex. 1. Noble contends that it will cost approximately $30,000 to review and produce Cunningham's relevant emails. *Id.*

---

The court will instead assess proportionality, to the extent appropriate in this type of case, by ensuring that the requested discovery is not overly burdensome in accordance with the fourth *Intel* factor.

[3] In the Israeli lawsuit, Petitioners allege that Noble was a majority participant in a consortium that received licenses and permits to explore natural gas deposits in Israel's exclusive economic zone. *See* Dkt. 25 (explaining the allegations in the Israeli case).

Petitioners argue that their delay has not prejudiced Noble because Noble has already identified and collected responsive emails. Dkt. 40. They assert that they "may be willing to share in the cost of production, but only as to reasonable costs as pre-approved by the Court," and they contend that the costs cited by Noble are "clearly excessive." Dkt. 40. They further urge that they need to depose Cunningham because she "alone can authenticate and explain the context of her numerous email communications." *Id.*

Noble argues that deposing Cunningham is unnecessary because Petitioners have learned what Cunningham knows through the Rule 30(b)(6) deposition of Noble's corporate representative, who prepared extensively with Cunningham prior to the deposition. Dkt. 42. Moreover, Noble asserts that it would be a burden to allow the deposition and document production because, since Cunningham is no longer employed by Noble, it would be required to reestablish a relationship with her, enter a representation agreement with her, and prepare her to testify about events that occurred over ten years ago. Dkt. 39. Additionally, the attorney who assisted in collecting the documents originally is no longer employed by Noble, so another attorney will have to learn about this case and Noble's document collection efforts. *Id.* Noble argues that these burdens "are in addition to the general burden of having to ramp back up an long-dormant case." *Id.*

While the court agrees that it is more burdensome at this point for Noble to produce the emails, Noble has already collected the emails, and Petitioners have offered to pay the reasonable costs of production. The court understands that the employees are no longer available if Noble has questions when reviewing the emails, but the court does not find that this added burden is sufficient to change the calculus. Accordingly, Petitioners' motion to compel production of the emails is GRANTED IN PART. Noble shall provide the relevant non-privileged emails it collected with the search terms it originally proposed, but Petitioners must pay the reasonable cost of reactivating the

data and reviewing the emails.[4] The court finds this cost-shifting to be particularly appropriate due to Petitioners' delay and failure to comply with the court's discovery order.

Petitioners also seek leave to depose Cunningham even though the court originally only ordered one Rule 30(b)(6) deposition. Petitioners have argued but have not shown that the deponent provided by Noble was inadequately prepared. The court therefore DENIES Petitioners' motion for leave to take Cunningham's deposition.[5]

Finally, as to the motion to reopen, the court finds that it is appropriate to reopen this case for a limited amount of time so that Noble can review and produce relevant and unprivileged documents.

## IV. CONCLUSION

Petitioners' motion (Dkt. 28) is GRANTED IN PART AND DENIED IN PART.

The motion, to the extent is seeks leave to take Cunningham's deposition, is DENIED.

The motion, to the extent it requests that the court compel Noble to produce documents, is GRANTED IN PART. The parties shall meet and confer about the costs of producing these documents on or before January 15, 2019, and they shall advise the court's case manager if they are unable to come to an agreement. Noble shall provide the relevant non-privileged emails it collected with the search terms it proposed on October 12, 2016 (*see* Dkt. 29-3), or before February 22, 2019. Petitioners must pay the reasonable cost of reactivating the data and reviewing the emails.

---

[4] The court agrees with Petitioners that Noble can review these documents for relevancy and privilege for less than $30,000. The court encourages the parties to attempt to reach an agreement regarding the cost before approaching the court to determine how many hours and what rate is appropriate for a routine matter like document review.

[5] If, after Cunningham's emails are produced, Petitioners can show an actual issue with authentication or specific issues that need Cunningham's clarification, the court may entertain a motion to take a very limited deposition on written questions.

Petitioners' motion, to the extent it request that the court reopen this case, is GRANTED. However, the parties are ORDERED to advise the court on or before March 1, 2019, about the status (and completion) of discovery so that the court may expeditiously enter a final judgment.

Signed at Houston, Texas on January 8, 2019.

_____
Gray H. Miller
United States District Judge